**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO**

Civil Action No. _____

**ANNA MARIA JORGENSEN, and
ARON JORGENSEN,**

  **Plaintiffs,**

**v.**

**AMERICAN MEDICAL SYSTEMS**

  **Defendants.**

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

  COME NOW ANNA MARIA JORGENSEN and ARON JORGENSEN as Plaintiffs

herein and hereby file this Complaint, showing the Court as follows:

**<u>PARTIES, JURISDICTION AND VENUE</u>**

  1.  Plaintiffs ANNA MARIA JORGENSEN and ARON JORGENSEN (hereinafter

collectively referred to as "Plaintiffs") are citizens of Broomfield County in the State of

Colorado.

  2.  Upon information and belief, Defendant AMERICAN MEDICAL SYSTEMS

("AMS" or "Defendant") develops technology to diagnose and treat conditions related to the

pelvic health of women. At all times relevant herein, Defendant was engaged in the business of

placing medical devices in to the stream of commerce by designing, manufacturing, marketing,

packaging, labeling, and selling such devices, including the Monarc Sling System (hereinafter referred to as the "Product").

3.      Upon information and belief, and at all relevant times Defendant was and is a Delaware corporation with its principal place of business in Minnesota and has transacted and conducted business in the State of Colorado. All acts and omissions of AMS as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

4.      Upon information and belief Defendant expected or should have expected that its acts would have consequences within the United States of America, and the District of Colorado in particular and derived substantial revenue from interstate commerce.

5.      Plaintiffs are seeking damages in excess of $75,000.00. Subject matter jurisdiction is proper pursuant to 28 U.S.C. §1332.

6.      A substantial part of the events, and omissions giving rise to Plaintiffs' causes of action occurred in the District of Colorado. Pursuant to 28 U.S.C. § 139l(a), venue is proper in the District of Colorado.

## FACTUAL BACKGROUND

7.      Defendant designed, manufactured, packaged, labeled, marketed, sold, and distributed the Product, including that which was implanted in Plaintiff giving rise to Plaintiffs' claims asserted herein.

8.      Plaintiff was implanted with the AMS Monarc Sling System during surgery performed by Dr. Jeffrey Kerr-Layton at Good Samaritan Medical Center in Lafayette, Colorado on July 25, 2013.

9.     The Product was implanted to treat Plaintiff for stress urinary incontinence, the use for which the Product was designed, marketed and sold.

10.     As a result of having the Product implanted in her body, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, permanent and substantial physical deformity, and loss of bodily organ system, and has undergone corrective surgery.

11.     Defendant sought and obtained FDA clearance to market the Products under Section 510(k) of the Medical Device Amendment to the Food, Drug and Cosmetics Act. Section 510(k) provides for marketing of a medical device if the device is deemed "substantially equivalent" to other predicate devices marketed prior to May 28, 1976. No formal review for safety or efficacy is required, and no review for safety or efficacy was ever conducted with regard to the Product.

12.     The methods and materials used to manufacture the AMS Products, including the Product that which were implanted in Plaintiff, have numerous defects that create a high risk of unreasonable and dangerous injuries and side effects with severe permanent adverse health consequences. These defects include, but are not limited to:

a.     The material is not inert and therefore reacts to human tissues and/or other naturally occurring human bodily contents adversely affecting patient health.

b.     The mesh material harbors infections that adversely affect human tissues and patient health.

c.     The Products and mesh migrate from the location of their implantation, adversely affecting tissues and patient health.

d.     The mesh material abrades tissues adversely affecting patient health.

3

     e.     The Products and mesh regularly fail to perform the purpose of their implantation such that the patient requires removal of the device and repeated treatment and surgery.

     f.     Due to their various defects, the Products and the mesh regularly cause significant injury to patients such that the Products must be removed, resulting in additional surgery.

     g.     The Products and the mesh become embedded in human tissue over time such that if it needs to be removed due to its various defects, the removal causes damage to organs and tissues, adversely affecting patient health.

     h.     The Products are defective in shape, composition, weight, physical, chemical and mechanical properties and is inappropriately engineered for us in the female pelvis.

13.     Because of its numerous defects, the Product creates an unreasonable risk of injury and other adverse health consequences for patients, including, but not necessarily limited to, vaginal erosion, infection, extrusion, perforation, chronic pain and/or abscess.

14.     Prior to the time that the Product was implanted into Plaintiff, the Defendant was aware of numerous defects in the Product and the mesh, including, but not limited to, the defects and unreasonable risks identified above. Despite being aware of the numerous defects and unreasonable risks in the Product, the Defendant manufactured, marketed, and distributed the Product with the intent that it would be implanted in patients. The Defendant was aware that implanting the Product in patients was likely to cause injury and harm to the patients into whom the Products were implanted. Alternatively, the Defendant failed to exercise reasonable care in determining the risks and potential adverse consequences of implanting the Product into patients.

15.     The Defendant made public statements in the form of written product descriptions, product labels, promotional materials and other materials that asserted that implanting the Products in patients was safe and would not cause harm to patients. These statements were made with the intent that medical professionals and members of the public would rely upon them, with the intent that members of the public would pay for the Product and that the Products would be implanted in patients. When the Defendant made these statements, the Defendant knew that the statements were inaccurate. Alternatively, when the Defendant made these statements the Defendant should have known the statements were inaccurate.

16.     The Defendant knowingly and deliberately made material misrepresentations to the federal Food and Drug Administration concerning the design, manufacture, safety, and efficacy of the Product.

17.     Before Plaintiff suffered the injuries complained of herein, the Defendant was on notice of numerous bodily injuries caused by the Product, and based thereon, the Defendant !mew or should have known that the Products caused an unreasonably high rate of vaginal erosion, infection, extrusion, perforation, chronic pain and/or abscess in women implanted with the Products.

18.     On July 13, 2011, the FDA issued a Safety Communication wherein the FDA stated that "serious complications associated with surgical mesh for transvaginal repair of POP are not rare."

19.     Even though the Defendant has known or should have known that the Product created a foreseeable, unreasonable risk of harm to those women into whom it was implanted, the Defendant continued to market the Products in the United States.  The Defendant has sold thousands of Products in the United States alone.

20.     The Defendant has never provided adequate warning or information of the risks that the Product causes an unreasonably high rate of vaginal erosion, infection, extrusion, perforation, chronic pain and/or abscess to physicians who implanted the Product, or to women implanted with the devices.

21.     Plaintiffs were unaware that the Product and its defects had an adverse effect upon them until recently.

## CAUSES OF ACTION

### COUNT I: NEGLIGENCE

22.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

23.     Defendant had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of the Product into the stream of commerce, including a duty to assure that the Products would not cause users to suffer unreasonable, dangerous side effects.

24.     Defendant failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of the Products into interstate commerce in that Defendant knew or should have known that using the Products created a high risk of unreasonable, dangerous side effects, severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial or economic

loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

25.     The negligence of the Defendant, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

     a.     Manufacturing, producing, promoting, formulating, creating, and/or designing the Product without thoroughly testing them;

     b.     Manufacturing, producing, promoting, formulating, creating, and/or designing the Product without adequately testing them

     c.     Not conducting sufficient testing programs to determine whether or not the Product were safe for use; in that Defendant herein knew or should have known that the Products were unsafe and unfit for use by reason of the dangers to their users;

     d.     Selling the Product without making proper and sufficient tests to determine the dangers to their users;

     e.     Negligently failing to adequately and correctly warn the Plaintiffs, the public, the medical and healthcare profession, and the FDA of the dangers of the Product;

     f.     Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, the Product;

     g.     Failing to test the Product and/or failing to adequately, sufficiently and properly test the Product.

     h.     Negligently advertising and recommending the use of the Product without sufficient knowledge as to their dangerous propensities;

i.      Negligently representing that the Product were safe for use for their intended purpose, when, in fact, they were unsafe;

j.      Negligently designing the Product in a manner which were dangerous to their users;

k.      Negligently manufacturing the Product in a manner which were dangerous to their users;

l.      Negligently producing the Product in a manner which were dangerous to their users;

m.      Negligently assembling the Product in a manner which were dangerous to their users;

n.      Concealing information concerning FDA warnings from the Plaintiffs in knowing that the Product were unsafe, dangerous, and/or non-conforming with FDA regulations; and

o.      Improperly concealing and/or misrepresenting information from the Plaintiffs, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of the Product.

26.     Defendant under-reported, underestimated and downplayed the serious dangers of the Product.

27.     Despite the fact that Defendant knew or should have known that the Products caused unreasonably dangerous side effects, Defendant continued and continue to market, manufacture, distribute and/or sell the Product to consumers, including the Plaintiff.

28.     Defendant knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care, as set forth above.

29.     Defendant's negligence was the proximate cause of Plaintiffs' injuries, harm and economic loss which they suffered and/or will continue to suffer. As a direct and proximate result of Defendant's negligence, Plaintiffs were caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and treble damages, together with pre and post judgment interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II: STRICT LIABILITY - DESIGN DEFECT

30.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

31.     At all times herein mentioned, the Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendant who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the Products as hereinabove described that were used by the Plaintiff.

32.     That the Product were expected to and did reach the usual consumers, handlers, and persons coming into contact with said Product without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by the Defendant.

33.     At those times, the Product were not reasonably safe for their intended use and were defective as a matter of law with respect to its design.

34.     At all times herein mentioned, the Product were in a defective condition and were not reasonably safe, and Defendant knew or had reason to know that said Products were defective and unsafe, especially when used in the form and manner as provided by the Defendant.

35.     Defendant knew, or should have known, that at all times herein mentioned its Products were in a defective condition, and were and are inherently dangerous and unsafe.

36.     Defendant with this knowledge voluntarily designed its Product in a dangerous condition for use by the public, and in particular the Plaintiff.

37.     Defendant had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

38.     Defendant created a product unreasonably dangerous for its normal, intended use.

39.     The Product designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant was manufactured defectively in that the Product left the hands of Defendant in a defective condition and were unreasonably dangerous to their intended users.

40.     The Product designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant reached its intended users in the same defective and unreasonably dangerous condition in which the Defendant's Product was manufactured.

41.     Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendant is therefore strictly liable for the injuries sustained by the Plaintiff.

42.     The Plaintiff could not, by the exercise of reasonable care, have discovered the Product's defects herein mentioned and perceived their danger.

43.     The Product designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant were defective due to inadequate warnings or instructions as the Defendant knew or should have known that the Product created a high risk of unreasonable, dangerous side effects, severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

44.     By reason of the foregoing, the Defendant has become strictly liable in tort to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of defective Products.

45.     As a result of the foregoing acts and omissions the Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and treble damages, together with pre and post judgment interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III: STRICT LIABILITY - MANUFACTURING DEFECT

46.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

47.     The Product implanted in Plaintiff was not reasonably safe for its intended use and were defective as a matter of law with respect to their manufacture.

48.     Plaintiff did rely on the express warranties of the Defendant herein.

49.     Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendant for use of the Product in recommending the Product.

50.     The Defendant herein breached the aforesaid express warranties, as their Products were defective.

51.     By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to her use of Defendant's Product.

52.     As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and treble damages, together with pre and post judgment interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV: STRICT LIABILITY - FAILURE TO WARN

53.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

54.     The Product implanted in Plaintiff were not reasonable safe for its intended use and was defective as a matter of law due to its lack of appropriate and necessary warnings.

55.     The Defendant impliedly represented and warranted to the users of the Product and their physicians, healthcare providers, and/or the FDA that the Products was reasonably safe and of merchantable quality and fit for their intended purpose for which said Product were to be used.

56.     That said representations and warranties aforementioned were false, misleading, and inaccurate in that the Product was not reasonably safe, unreasonably dangerous, improper, not of merchantable quality, and defective.

57.     Plaintiff, and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

58.     Plaintiff and her physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendant as to whether the Products were of merchantable quality and safe and fit for their intended use.

59.     The Defendant herein breached the aforesaid implied warranties, as their Products were not fit for their intended purposes and uses.

60.     As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer severe personal injuries which are permanent and lasting in nature, physical pain

and mental anguish, including diminished enjoyment of life, financial or economic loss,
including, but not limited to, obligations for medical services and expenses, present and future
lost wages and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and
treble damages, together with pre and post judgment interest, costs of suit, attorneys' fees, and all
such other relief as the Court deems proper.

## COUNT V: BREACH OF EXPRESS WARRANTY

61.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint
contained in each of the foregoing paragraphs inclusive, with the same force and effect as if
more fully set forth herein.

62.     The Defendant falsely and fraudulently represented to the medical and healthcare
community, and to the Plaintiff, and/or the FDA, and the public in general, that said Product had
been tested and were found to be safe and reasonably fit for their intended purpose.

63.     Plaintiff and/or her health care providers chose the Product based upon Defendant'
warranties and representations regarding the safety and fitness of the Product.

64.     Plaintiff, individually and/or by and through her physician, reasonably relied upon
Defendant's express warranties and guarantees that the Product was safe, merchantable and
reasonably fit for their intended purpose.

65.     Defendant breached these express warranties because the Product implanted in
Plaintiff was unreasonably dangerous and defective and not as Defendant had represented.

66.     That representations made by Defendant were, in fact, false.

14

67.     When said representations were made by Defendant, they knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

68.     At the time the aforesaid representations were made by the Defendant and, at the time the Product was implanted in Plaintiffs body, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

69.     In reliance upon said representations, the Plaintiff was induced to and did use the Product, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

70.     Said Defendant knew and was aware or should have been aware that the Product had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient warnings.

71.     Defendant knew or should have known that the Product had a potential to, could, and would cause severe and grievous injury to the users of said Product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

72.     Defendant's breach of their express warranties resulted in the implantation of an unreasonably dangerous and defective Product in Plaintiffs body, placing Plaintiffs health and safety in jeopardy.

73.     As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial or economic loss,

including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and treble damages, together with pre and post judgment interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI: BREACH OF IMPLIED WARRANTY

74.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

75.     Defendant impliedly warranted that the Product was merchantable and were fit for the ordinary purpose for which they were intended.

76.     When the Product was implanted in Plaintiff to treat her stress urinary incontinence, they were being used for the ordinary purposes for which they were intended.

77.     Plaintiff, individually and/or by and through her physician, relied upon Defendant's implied warranty of merchantability in consenting to have the Product implanted in her.

78.     Defendant knew or was reckless in not knowing that its representations were false.

79.     Defendant breached these implied warranties of merchantability because the Product implanted in Plaintiff was neither merchantable nor suited for the intended use as warranted.

80.     Defendant's breach of their implied warranties resulted in the implantation of an unreasonably dangerous and defective Product in Plaintiffs body, placing her health and safety in jeopardy.

81.     As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and treble damages, together with pre and post judgment interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT VII: NEGLIGENT MISREPRESENTATION

82.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

83.     Defendant had a duty to represent to the medical and healthcare community, and to the Plaintiff, the FDA and the public in general that said Product had been tested and found to be reasonably safe and effective for their intended use.

84.     Plaintiff, individually and/or by and through her physician, relied upon Defendant's representations in consenting to have the Product implanted in her.

85.     The representations made by Defendant were, in fact, false.

86.     As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and treble damages, together with pre and post judgment interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VIII: FRAUD AND DECEIT

87.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

88.     Defendant falsely and fraudulently represented to Plaintiff, her physicians, and to the public in general that the aforesaid Product was safe, effective, reliable, consistent, and reasonably fit for their intended purpose.

89.     As a result of Defendant's research and testing, or lack thereof, Defendant intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiff.

90.     Defendant had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff, as well as their respective healthcare providers and/or the FDA.

91.     The information distributed to the public, the FDA, and the Plaintiff by Defendant, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

92.     The information distributed to the public, the FDA, and the Plaintiff by Defendant intentionally included representations that Defendant's Products were safe and effective for their intended use.

93.     The information distributed to the public, the FDA, and the Plaintiff, by Defendant intentionally included false representations that the Product was safe, effective, reliable, consistent, and reasonably fit for their intended purpose.

94.     Defendant intentionally made material representations to the FDA and the public, including the medical profession, and the Plaintiff, regarding the safety of the Product.

95.     Defendant made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that the Product was safe, effective, reliable, consistent, and reasonably fit for their intended purpose.

96.     That these representations and others made by Defendant were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

97.     That these representations and others, made by Defendant, were made with the intention of deceiving and defrauding the Plaintiff, including their respective healthcare professionals and/or the FDA, and were made in order to induce the Plaintiff and/or her respective healthcare professionals to rely upon misrepresentations and caused the Plaintiff to use the Product placing her health and safety in jeopardy.

98.    That had the Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of the Product, Plaintiff would not have used and/or relied on the Product.

99.    That the Defendant's aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff.

100.    As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and treble damages, together with pre and post judgment interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IX: LOSS OF CONSORTIUM ON BEHALF OF PLAINTIFF ARON JORGENSEON

101.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

102.    Plaintiff ARON JORGENSEN, was and is the lawful spouse of Plaintiff ANNA MARIA JORGENSEN, and as such, was and is entitled to the comfort, enjoyment, society and services of his spouse.

103.    As a direct and proximate result of the foregoing, Plaintiff ARON JORGENSEN has suffered loss of affection, society, companionship, aid, comfort, services, benefits and

counsel of his spouse, Plaintiff ANNA MARIA JORGENSEN, and impairment of the quality of his life, as a result of Plaintiff ANNA MARIA JORGENSEN's injuries.

104.    As a direct and approximate result of the foregoing, Plaintiff ARON JORGENSEN has incurred damages in the amount to be proved at the time of trial.

105.    The Plaintiffs, ANNA MARIA JORGENSEN and ARON JORGENSEN's injuries and damages are permanent and will continue into the future.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory and treble damages, together with pre and post judgment interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendant on each of the above-referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with pre and post judgment interest and costs as provided by law;

2.    Awarding Plaintiffs reasonable attorneys' fees;

3.    Awarding Plaintiffs the costs of these proceedings; and

4.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY

Trial to a jury of six (6) is demanded on all issues so triable.

Dated: September 18, 2019

RESPECTFULLY SUBMITTED,

COOK, BRADFORD & LEVY, LLC

/s/ *Jason D. Levy*
Jason D. Levy, Esq. #48571
COOK, BRADFORD & LEVY, LLC
2590 Trailridge Drive East, #202
Lafayette, Colorado 80026
Telephone: 303-543-1000
Facsimile: 303-543-8582
E-mail:  Jason@colegalteam.com

and

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
Brandon J. Levine #412130
Elizabeth T. D'Antuono VA Bar #79756
1310 L Street, NW, Suite 800
Washington, DC 20005
P: (202) 833-8040
F: (202) 833-8046
aaronlevinelaw@gmail.com

Attorney(s) for Plaintiff